# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

THE SATANIC TEMPLE and )
MARY DOE, )
)
       Plaintiffs, )
)
       v. )    Case No.  15-986-HEA
)
JEREMIAH JAY NIXON, )
GOVERNOR OF THE STATE OF )
MISSOURI, )
)
       and )
)
CHRIS KOSTER, ATTORNEY )
GENERAL FOR THE STATE OF )
MISSOURI, )
)
       Defendants. )

## MEMORANDUM IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

Respectfully submitted,                 September 8, 2015

CHRIS KOSTER                       P.O. Box 899
Attorney General                  Jefferson City, MO 65102

/s/  J. Andrew Hirth               (573) 751-0818
J. Andrew Hirth, Mo. Bar No. 57807    (573) 751-0774 Facsimile
Deputy General Counsel            Andy.Hirth@ago.mo.gov
*Attorneys for Defendants*

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................... iii

Introduction ....................................................................................................................1

Background ......................................................................................................................2

Motion to Dismiss Standard ...........................................................................................5

Argument ........................................................................................................................6

    I.    This Court lacks subject-matter jurisdiction over Plaintiffs' claim against Governor

        Nixon and Attorney General Koster ....................................................................6

        A.  The Complaint should be dismissed because Plaintiffs fail to allege any actual

            or imminent injury-in-fact sufficient to vest this Court with subject-matter

            jurisdiction .....................................................................................................6

        B.  Even if Plaintiffs court establish standing and a ripe controversy, the relief they

            seek against Defendants Nixon and Koster is barred by the Eleventh

            Amendment ...................................................................................................10

    II.    Even if the Court has subject-matter jurisdiction in this case, Plaintiffs have not

        stated a claim upon which relief can be granted .....................................................14

        A.  The State's policy preference for carrying unwanted pregnancies to term does

            not violate the Establishment Clause .............................................................14

        B.  Section 188.027 does not interfere with Plaintiffs' purported religious beliefs in

            violation of the Free Exercise Clause ............................................................17

Certificate of Service ....................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*281 Care Comm. v. Arneson,*
    766 F.3d 774 (8th Cir. 2014) *cert. denied*, 135 S. Ct. 1550, 191 L. Ed. 2d 637 (2015)......11

*ACLU Nebraska Found. v. City of Plattsmouth, Neb.,*
    419 F.3d 772 (8th Cir. 2005) ...................................................................................14, 15

*Advanced Auto Transp. v. Pawlenty,*
    No. 10–159, 2010 U.S. Dist. LEXIS 53719, at *8, 2010 WL 2265159
    (D. Minn. June 2, 2010)....................................................................................................12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................................................5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..........................................................................................................5

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520 (1993)........................................................................................................18

*Crumpley-Patterson v. Trinity Lutheran Hosp.,*
    388 F.3d 588 (8th Cir.2004) .............................................................................................5

*Davis v. GlaxoSmithKline,*
    No. 4:07CV1411 HEA, 2007 WL 4178617, at *1 (E.D. Mo. Nov. 19, 2007) (Autrey, J.)...5

*Doe ex rel. Doe v. Elmbrook Sch. Dist.,*
    687 F.3d 840 (7th Cir. 2012) ..........................................................................................15

*Duit Const. Co. Inc. v. Bennett,*
    ----- F.3d -----, No. 14-2779, 2015 WL 4645965, at *2 (8th Cir. Aug. 6, 2015)...........10, 11

iii

*Employment Div., Dep't of Human Res. of Oregon v. Smith*,

    494 U.S. 872 (1990) ..................................................................................18

*Ex parte Young*,

    209 U.S. 123 (1908) ................................................................10, 11, 12, 14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

    528 U.S. 167 (2000)) ....................................................................................7

*Gray v. City of Valley Park, Mo.*,

    567 F.3d 976 (8th Cir. 2009) .....................................................................6, 7

*Harmon v. City of Kansas City, Mo.*,

    197 F.3d 321 (8th Cir. 1999) .........................................................................8

*Harris v. McRae*,

    448 U.S. 297 (1980) ....................................................................................16

*KCCP Trust v. City of North Kansas City*,

    432 F.3d 897 (8th Cir.2005) ..........................................................................8

*Lakeside Roofing Co. v. Nixon*,

    No. 4:10CV01761 JCH, 2011 WL 1465593, at *6 (E.D. Mo. Apr. 18, 2011) .............12, 13

*Lemon v. Kurtzman*,

    403 U.S. 602 (1971), ...................................................................14, 15, 17

*Maher v. Roe*,

    432 U.S. 464 (1977) ....................................................................................17

*McFarlin v. Newport Special Sch. Dist.*,

    980 F.2d 1208 (8th Cir. 1992) ..................................................................6, 7, 9

*McGowan v. Maryland,*

   366 U.S. 420 (1961)...........................................................................15, 16

*Minn. Citizens Concerned for Life v. Swanson,*

   No. 10–2938, 2011 U.S. Dist. LEXIS 20278, at *8, 2011 WL 797462

   (D.Minn. Mar. 1, 2011).........................................................................12

*Nat'l Park Hospitality Ass'n v. Dep't of Interior,*

   538 U.S. 803 (2003).............................................................................7

*Nat'l Right to Life Political Action Comm. v. Connor,*

   323 F.3d 684 (8th Cir. 2003) ...........................................................7, 9, 10

*Pennhurst State Sch. & Hosp. v. Halderman,*

   465 U.S. 89 (1984)..............................................................................10

*Planned Parenthood of Se. Pennsylvania v. Casey,*

   505 U.S. 833 (1992)............................................................................17

*Randolph v. Rodgers,*

   170 F.3d 850 (8th Cir.1999) ..................................................................7

*Roark v. S. Iron R-1 Sch. Dist.,*

   573 F.3d 556 (8th Cir. 2009) .................................................................15

*Roe v. Wade,*

   410 U.S. 113 (1973)...........................................................................9, 16

*Shell Oil Co. v. Noel,*

   608 F.2d 208 (1st Cir .1979).................................................................12, 13

*Turner v. Mull,*

   784 F.3d 485 (8th Cir. 2015) ..................................................................8

*United States v. Lee,*

    455 U.S. 252 (1982)...................................................................................................18

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,*

    454 U.S. 464, 471 (1982)...........................................................................................6

*Van Orden v. Perry,*

    545 U.S. 677 (2005)...........................................................................................14, 15

*Webster v. Reprod. Health Servs.,*

    492 U.S. at 506...............................................................................................16, 17

*Webster v. Reprod. Health Servs.,*

    851 F.2d 1071 (8th Cir. 1988) ...................................................................................16

*Westco Corp. v. Sch. Dist. of Philadelphia,*

    6 F.3d 108, 113 (3d Cir.1993)...................................................................................12

**Statutes**

Mo. Rev. Stat. §27.030 ...............................................................................................13

Mo. Rev. Stat. § 188.010 .............................................................................................12

Mo. Rev. Stat. § 188.015 .......................................................................................11, 14

Mo. Rev. Stat. § 188.027 ...................................................................................... passim

Mo. Rev. Stat. § 188.030 .............................................................................................12

Mo. Rev. Stat. § 188.075 .......................................................................................12, 13

Mo. Rev. Stat. § 188.085 .............................................................................................12

U.S. Const. amend I. ...................................................................................................14

U.S. Const. amend. XI .................................................................................................10

42 U.S.C. § 1983.........................................................................................................11

**Introduction**

Plaintiffs challenge the constitutionality of Mo. Rev. Stat. § 188.027 (2014), which requires Missouri abortion providers to offer their patients certain written materials as well as the opportunity to view an ultrasound of their fetuses at least 72 hours before terminating their pregnancies.[1]  Plaintiffs *do not allege* that any provision of Missouri law imposes an undue burden on the right to obtain an abortion under *Roe v. Wade* and *Casey v. Planned Parenthood*. Rather, they argue that § 188.027 violates the Establishment and Free Exercise Clauses of the First Amendment by "using [the State's] power to regulate abortion to promote some, but not all, religious beliefs that [a fetus] is, from conception, a separate and unique human being whose destruction is morally wrong."  Compl. ¶39.  Plaintiffs ask this Court to declare § 188.027 unconstitutional and permanently enjoin the governor and attorney general of Missouri from enforcing its provisions.

Defendants have moved to dismiss the Complaint for want of jurisdiction and failure to state a claim upon which relief can be granted.  As discussed below, Plaintiffs do not have standing, their claims are not ripe for review, and the named Defendants have Eleventh Amendment immunity from suit in this Court.  In addition, Plaintiffs fail to allege any factual basis for this Court to conclude that §188.027 violates the First Amendment.  For any and all of these reasons, their Complaint should be dismissed.

---

[1] All statutory citations in this Memorandum refer to the Revised Missouri Statutes (2014 Supp.) unless noted otherwise.

**Background**

Mary Doe is a Missouri resident and member of the Satanic Temple, "an association of politically aware Satanists, secularists, and advocates for individual liberty." Compl. ¶1.  Doe *has had* an abortion in Missouri and could have an abortion in Missouri again in the future. *Id.* ¶11.  Other members of the Satanic Temple *have also had* abortions in Missouri or could have abortions in Missouri in the future. *Id.* ¶10. Plaintiffs *do not allege* that Doe or any member of the Satanic Temple was pregnant at the time the Complaint was filed or is currently seeking an abortion

Doe and other members of the Satanic Temple adhere to the following "religious beliefs" related to pregnancy and abortion:

- A woman's body is inviolable and subject to her will alone;

- She makes decisions regarding her health based on the best scientific understanding of the world, even if the science does not comport with the religious or political beliefs of others;

- Human tissue in utero that is not viable is part of her body;

- She alone decides whether to remove human tissue in utero that is not viable from her body; and

- She may, in good conscience, have human tissue in utero that is not viable removed from her body on demand and without regard to the current or future condition of the human tissue.

*Id.* ¶31. Members of the Satanic temple do not believe (a) that the life of a human being begins at conception; (b) that abortion terminates the life of a separate, unique, living human begin; or (c) that the removal of fetal tissue from a woman's body is morally wrong. *Id.* ¶32.

Missouri law requires that certain information be made available to every woman seeking an abortion at least 72 hours in advance.[2]  Much of the required information is contained in a booklet prepared by the Missouri Department of Health and Senior Services ("DHSS Booklet"). *Id.* ¶13 (citing Mo. Rev. Stat. § 188.027.1(2) (2014)). Per statute, the DHSS booklet must contain the following statements: "The life of each human being begins at conception. Abortion will terminate the life of a separate, unique, living human being." *Id.* ¶14 (quoting Mo. Rev. Stat. § 188.027.1(2) (2014))("Challenged Statements").[3]

The DHSS Booklet also contains detailed descriptions and images of the anatomical and physiological characteristics of fetal tissue at two-week gestational increments from conception to full term, including each of the following:

- The fetal heartbeat can be detected with a Doppler or heart monitor;

- The fetal heartbeat can be heard with a stethoscope;

- The fetus can blink, grasp, and move its mouth;

- If the hand floats to the mouth, the fetus may suck its thumb;

- The fetus hears the mother's sounds such as her heartbeat, breathing and speaking;

- The fetus sleeps and wakes regularly;

- At least 22 weeks of gestational age, the fetus possesses all the anatomical structures, including pain receptors, spinal cord, nerve tracts, thalamus, and cortex, which are required to feel pain.

_____

[2] If the 72-hour waiting period is ever enjoined, Missouri law imposes a 24-hour waiting period. Mo. Rev. Stat. § 188.027.12 (2014).

[3] Plaintiffs refer to these two statements throughout their Complaint as the "Missouri Tenets," presumably to imbue them with religious connotation. *See* Compl. ¶14.  They refer to all of the information abortion providers must give their patients under Missouri law collectively as the "Missouri Lectionary." Compl. ¶¶14, 22. Neither term appears in the Missouri Revised Statutes or any case law interpreting those statutes.

3

*Id.* ¶17 (quoting Mo. Rev. Stat. § 188.027.1(5) (2014)).

Missouri law further requires abortion providers, at least 72 hours before performing an abortion, to offer their patients "the opportunity to view ... an active ultrasound of the unborn child and hear the heartbeat of the unborn child if the heartbeat is audible." *Id.* ¶18 (quoting Mo. Rev. Stat. § 188.027.1(4) (2014))("Ultrasound Opportunity").  The Ultrasound Opportunity must include "the dimensions of the unborn child, and accurately portray[] the presence of external members and internal organs, if present or viewable, of the unborn child." *Id.* (quoting Mo. Rev. Stat. § 188.027.1(4) (2014)).  A woman must certify in writing that she has been provided the DHSS Booklet and the Ultrasound Opportunity at least 72 hours before her pregnancy can be terminated under Missouri law. *Id.* ¶21 (citing Mo. Rev. Stat. § 188.027.3 (2014)).

Mary Doe and other members of the Satanic Temple who have obtained abortions in Missouri have been given copies of the DHSS Booklet and the Ultrasound Opportunity at least 72 hours before their abortions were performed.  *Id.* ¶¶27-28.  If Doe or another member of the Satanic Temple becomes pregnant in the future and chooses to terminate her pregnancy in Missouri, she will (or will again) be given a copy of the DHSS Booklet and the Ultrasound Opportunity at least 72 hours before her abortion will be performed. *Id.* ¶30.

Plaintiffs allege that the DHSS Booklet and the Ultrasound Opportunity are irrelevant to Mary Doe and other members of the Satanic temple who believe fetal tissue can be removed from their bodies on demand and in good conscience without regard to the fetal tissue's current or future condition. *Id.* ¶33. Plaintiffs claim the DHSS Booklet and the Ultrasound Opportunity are not medically necessary to make an informed decision about abortion, as women are able to obtain abortions in other states without receiving either.  *Id.* ¶¶34-35.

4

Plaintiffs allege that Missouri law requires abortion providers to present their patients with the DHSS Booklet and the Ultrasound Opportunity in an effort to:

- Encourage a pregnant woman who has decided to get an abortion to believe [the Challenged Statements] and forgo an abortion;

- Compel a woman who has decided to get and abortion to wait and consider the [Challenged Statements and other information made available to her pursuant to §188.027] for at least three days before getting the abortion; and

- Create doubt, guilt and shame in the mind of a pregnant woman who does not believe the [Challenged Statements].

Compl. ¶24. Plaintiffs further allege that the DHSS Booklet and the Ultrasound Opportunity caused Doe and other pregnant members of the Satanic Temple to endure delay, doubt, guilt, and shame when they obtained abortions in Missouri.

## Motion to Dismiss Standard

The purpose of a motion to dismiss is to test the sufficiency of the complaint. *Davis v. GlaxoSmithKline*, No. 4:07CV1411 HEA, 2007 WL 4178617, at *1 (E.D. Mo. Nov. 19, 2007) (Autrey, J.). The Court must accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir.2004). However, the Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**Argument**

**I.**     **This Court lacks subject-matter jurisdiction over Plaintiffs' claims against Governor Nixon and Attorney General Koster.**

In their two-count Complaint against the governor and attorney general of Missouri,

Plaintiffs ask this Court to declare unconstitutional and enjoin enforcement of five subsections of

Mo. Rev. Stat. § 188.027.  However, this Court lacks subject-matter jurisdiction to grant the

requested relief against either of the named defendants for two independent reasons.  First,

Plaintiffs have no standing to seek declaratory or injunctive relief invalidating § 188.027 because

they do not allege that Mary Doe or any other member of the Satanic Temple is pregnant and

seeking an abortion.  Second, the only defendants named in the Complaint—the governor and

attorney general of Missouri—are both immune from suit under the Eleventh Amendment.  For

either or both of these reasons, the Court should dismiss the Complaint for want of jurisdiction.


**A.**     **The Complaint should be dismissed because Plaintiffs fail to allege any actual or imminent injury-in-fact sufficient to vest this Court with subject-matter jurisdiction.**

"Article III of the Constitution limits the 'judicial power' of the United States to the

resolution of 'cases' and 'controversies.'" *Valley Forge Christian College v. Americans United*

*for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982).  To invoke federal jurisdiction,

a plaintiff must plead facts demonstrating "a definite and concrete controversy involving adverse

legal interests at every stage in the litigation." *Gray v. City of Valley Park, Mo.*, 567 F.3d 976,

982-83 (8th Cir. 2009).  "Through the passage of time and the occurrence of irrevocable events,

disputes may disappear so that federal courts no longer can grant effective relief." *McFarlin v.*

*Newport Special Sch. Dist.*, 980 F.2d 1208, 1210 (8th Cir. 1992). "The controversy must be one

for which the court can grant specific and conclusive relief." *Id.* The Supreme Court has

6

developed the justiciability doctrines of standing, ripeness, and mootness to aid lower courts in

determining whether they have Article III jurisdiction in a particular case.  *Id.*

"Standing represents perhaps the most important of all jurisdictional requirements." *Gray*

*v. City of Valley Park, Mo.*, 567 F.3d 976, 983 (8th Cir. 2009)(internal quotations omitted). The

standing doctrine "requires federal courts to satisfy themselves that the plaintiff has alleged such

a personal stake in the outcome of the controversy as to warrant [her] invocation of federal-court

jurisdiction." *Id.*  To establish standing to sue, a plaintiff must allege (1) an injury-in-fact or the

threat of injury-in-fact that is (a) concrete and particularized and (b) actual or imminent, not

conjectural or hypothetical; (2) that the injury is fairly traceable to defendant's challenged action;

and (3) that it is likely (as opposed to merely speculative) that a favorable judicial decision will

prevent or redress the injury. *Id.* at 984.

The corollary doctrines of mootness and ripeness can be described as "the doctrine of

standing set in a time frame." *Nat'l Right to Life Political Action Comm. v. Connor*, 323 F.3d

684, 691 (8th Cir. 2003)(quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

528 U.S. 167, 189 (2000)).  The mootness doctrine requires that "the personal interest that must

exist at the commencement of the litigation (standing) must continue throughout its existence" or

the case becomes moot. *Id.*  A claim for equitable relief is moot "where there is no showing of

any real or immediate threat that the plaintiff will be wronged again." *Randolph v. Rodgers*, 170

F.3d 850, 857 (8th Cir.1999). Conversely, the ripeness doctrine "prevent[s] the courts, through

avoidance of premature adjudication, from entangling themselves in abstract disagreements."

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003).  A claim is not

ripe for review if the alleged injury "rests upon contingent future events that may not occur as

anticipated, or indeed may not occur at all." *KCCP Trust v. City of North Kansas City*, 432 F.3d 897, 899 (8th Cir.2005) (quotation omitted).

Plaintiffs cannot establish standing to challenge §188.027 in this case because they fail to allege any actual or imminent injury-in-fact that could be redressed or prevented by a favorable decision. They do not allege that Doe or any other member of the Satanic Temple (collectively, "Temple Members") is *currently* pregnant and seeking an abortion.   They do not allege any Temple Member has a present intention of becoming pregnant and then seeking an abortion. They do not allege that any Temple Member fears prosecution for an abortion obtained in violation of §188.027 before this lawsuit began. At most, Plaintiffs allege that Temple Members *"have had"* abortions in Missouri in the past and "*may* again decide to get an abortion in Missouri" in the future *if* they become pregnant.  Compl. ¶¶10-11 (emphasis added). Neither constitutes an injury that can be redressed by a ruling in Plaintiffs' favor.

To the extent Plaintiffs' claims are based on constitutional injuries allegedly sustained by a Temple Member before this suit was filed, such injuries cannot be redressed with declaratory or prospective injunctive relief—the only remedies Plaintiffs request in their Complaint.[4] "The mere fact that injurious activity took place in the past does nothing to convey standing to seek injunctive relief against future constitutional violations." *Harmon v. City of Kansas City, Mo.*, 197 F.3d 321, 327 (8th Cir. 1999).

---

[4] Past violations of constitutional rights may give rise to a claim for damages, but Plaintiffs have not prayed for damages in their Complaint.  Such a claim would likely fail as a matter of law in this case anyway because Plaintiffs cannot and do not allege that either named defendant was *personally involved* in distributing the DHSS Booklet, offering to perform an ultrasound, or making any Temple Member wait 72 hours before obtaining an abortion. *See Turner v. Mull*, 784 F.3d 485, 493 (8th Cir. 2015) ("liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights").

To the extent Plaintiffs' claims are based on the *possibility* that a Temple Member *may* become pregnant in the future and *may* decide to terminate her pregnancy in Missouri at that time, such claims are not ripe for review now.  *Nat'l Right to Life Political Action Comm. v. Connor*, 323 F.3d 684, 693 (8th Cir. 2003)("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").  A mere "physical or theoretical possibility" of future injury is insufficient to establish Article III standing.  *McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1211 (8th Cir. 1992).  A plaintiff must show a "demonstrated probability" that the injury *will* occur before she can invoke this Court's subject-matter jurisdiction. *Id.*

Plaintiffs cannot establish standing to assert otherwise unripe causes of action by claiming this case is "capable of repetition yet evading review."  That narrow exception—which applies *only* to the mootness doctrine—permits courts to retain jurisdiction over certain kinds of time-sensitive claims (such as constitutional challenges to laws regulating abortion) that almost always become moot before they can be resolved through litigation. *See, e.g., Roe v. Wade*, 410 U.S. 113, 125 (1973) ("when, as here, pregnancy is a significant fact in the litigation, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete.")  For example, if Plaintiffs had alleged that Doe was still pregnant when this suit was filed—*i.e.*, that she *had* standing at the time of filing—her claim could remain viable even if mooted during the pendency of the case due to abortion, miscarriage, or childbirth.

However, being "capable of repetition yet evading review" is *not* an exception to the ripeness doctrine.  If a plaintiff's claim is not ripe when her suit is filed—*i.e.*, if she is not actually pregnant at the time of filing—then there was never any case or controversy to become

9

moot, and the exception for claims capable of repetition yet evading review is irrelevant. Such is the case here.  Plaintiffs *do not allege* that any Temple Member, including Doe, was actually pregnant when they filed their Complaint.  At best, they allege that Temple Members "have had" abortions in Missouri at some time in the past. A claim that is otherwise unripe cannot be salvaged simply because it could become moot before being fully adjudicated. *See, e.g., Nat'l Right to Life Political Action Comm. v. Connor*, 323 F.3d 684 (8th Cir. 2003)(though challenge to campaign law mooted by passage of election may be capable of repetition yet evading review, it must still be ripe for review for the court to have subject-matter jurisdiction).

Because they fail to allege any actual or imminent injury-in-fact for this Court to redress through injunctive or declaratory relief, Plaintiffs lack standing to sue over past injuries, and any claims they might have in the future are not yet ripe for review.  Their Complaint should therefore be dismissed for lack of subject-matter jurisdiction.

**B.     Even if Plaintiffs could establish standing and a ripe controversy, the relief they seek against Defendants Nixon and Koster is barred by the Eleventh Amendment.**

Generally, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citing U.S. Const. amend. XI). Nonetheless, the Supreme Court has long held "the Eleventh Amendment does not bar a suit against a state official to enjoin enforcement of an allegedly unconstitutional statute, provided that 'such officer [has] some connection with the enforcement of the act.' " *Duit Const. Co. Inc. v. Bennett*, ----- F.3d -----, No. 14-2779, 2015 WL 4645965, at *2 (8th Cir. Aug. 6, 2015)(quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). "The *Ex parte Young* exception only applies against officials 'who

threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected by an unconstitutional act.'" *281 Care Comm. v. Arneson*, 766 F.3d 774, 797 (8th Cir. 2014) *cert. denied*, 135 S. Ct. 1550, 191 L. Ed. 2d 637 (2015) (quoting *Ex parte Young*, 209 U.S. at 156)). "Absent that connection, the officer 'is merely ... a representative of the state,' and Eleventh Amendment immunity applies." *Duit Const. Co. Inc.*, 2015 WL 4645965, at *2 (8th Cir. Aug. 6, 2015) (quoting *Ex parte Young*, 209 U.S. at 157).

Plaintiffs fail to establish "some connection" between Defendants and enforcement of § 188.027 sufficient to bring their claims within the *Ex parte Young* exception. Indeed, Plaintiffs mention Defendants in only six paragraphs of their Complaint, and they assert nothing more than bare legal conclusions:

> 5.      Defendant Jeremiah ("Jay") Nixon is the Governor of the State of Missouri.
>
> 6.      Defendant Chris Koster is the Attorney General of the State of Missouri.
>
> 7.      Defendants and their agents and officers are responsible for the enforcement of Missouri state law including the regulation of abortions pursuant to Mo. Rev. Stat. §§ 188.015, et seq.
>
> 43.     Defendants are acting under color of state law in the creation, distribution and enforcement of the [DHSS Booklet and Ultrasound Opportunity] to promote the [Challenged Statements].
>
> 44.     Defendants have infringed on Plaintiffs' rights under the Establishment Clause in violation of 42 U.S.C. §1983 in the creation, distribution and enforcement of the [DHSS Booklet and Ultrasound Opportunity] to promote the [Challenged Statements].
>
> 50.     Defendants have infringed on Plaintiffs' rights under the Free Exercise Clause in violation of 42 U.S.C. §1983 in the creation, distribution and enforcement of the [DHSS Booklet and Ultrasound Opportunity] to promote the [Challenged Statements].

Compl. ¶¶5, 6, 7, 43, 44, and 50. None of these paragraphs alleges any *factual* connection between Defendants and enforcement of § 188.027.

11

As a threshold matter, none of the statutory provisions Plaintiffs challenge in this lawsuit subjects a woman who obtains an abortion in violation of those provisions to *any* civil or criminal liability.  By its own terms, §188.027 imposes certain duties on, and prohibits certain conduct by, abortion *providers*.  "Any person who contrary to the provisions of sections 188.010 to 188.085 knowingly *performs, induces, or aids in the performance* or inducing of any abortion or knowingly fails to perform any action required by sections 188.010 to 188.085 shall be guilty of a class A misdemeanor." Mo. Rev. Stat. § 188.075.1.  Nothing in §188.075 or any other section of chapter 188 suggests that the woman whose pregnancy is aborted in violation of those statutes faces prosecution herself.  *See* Mo. Rev. Stat. § 188.030.7 ("A woman upon whom an abortion is performed or induced in violation of this section shall not be prosecuted for a conspiracy to violate the provisions of this section.").

Nor can Plaintiffs establish a sufficient connection to the enforcement §188.027 based on Defendants' general duty to faithfully execute the laws of Missouri.  "[T]he Governor's duty under the Constitution to enforce the laws of the state does not provide 'some connection'" within the meaning of *Ex parte Young. Lakeside Roofing Co. v. Nixon*, No. 4:10CV01761 JCH, 2011 WL 1465593, at *6 (E.D. Mo. Apr. 18, 2011) (Hamilton, J.)(citing *Minn. Citizens Concerned for Life v. Swanson*, No. 10–2938, 2011 U.S. Dist. LEXIS 20278, at *8, 2011 WL 797462 (D.Minn. Mar. 1, 2011); *Advanced Auto Transp. v. Pawlenty*, No. 10–159, 2010 U.S. Dist. LEXIS 53719, at *8, 2010 WL 2265159 (D. Minn. June 2, 2010)); *see also* Westco Corp. v. Sch. Dist. of Philadelphia, 6 F.3d 108, 113 (3d Cir.1993)("General authority to enforce the law of the state is not sufficient to make government officials the proper parties to litigation challenging the law."); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir .1979) ("The mere fact

that a governor is under a general duty to enforce state laws does not make him a proper

defendant in every action attacking the constitutionality of a state statute.").

Even assuming that Mary Doe or another Temple Member could theoretically be

prosecuted under §188.075 for obtaining an abortion in violation of § 188.027, Plaintiffs do not

identify—and Defendants are not aware of—any constitutional or statutory authority under

which such prosecution could be initiated by either the governor or the attorney general.  Except

for violations of the state's consumer protection laws, the attorney general has no authority to try

criminal cases absent either (a) a local prosecutor's request for assistance or (b) a court

appointment as special prosecutor where the local prosecutor has a conflict of interest. Mo. Rev.

Stat. §27.030.  Plaintiffs do not allege that the prosecuting attorney for the City of St. Louis has

requested the attorney general's assistance in prosecuting violations of §188.027 or that she has a

conflict of interest in prosecuting such violations that would require the appointment of a special

prosecutor.  Thus, even assuming Plaintiffs could be prosecuted for obtaining an abortion in

violation of §188.027—something they do not allege—there is no reasonable basis to believe

that Attorney General Koster has the authority, much less the intention, of filing criminal charges

against them.  Similarly, Governor Nixon has no statutory authority to initiate criminal

proceedings of any kind, and his hypothetical and unexercised power to direct the attorney

general to aid a local prosecutor when such assistance is requested is not a sufficient connection

to overcome the governor's Eleventh Amendment immunity. *See Lakeside Roofing Co. v.*

*Nixon*, No. 4:10CV01761 JCH, 2011 WL 1465593, at *7 (E.D. Mo. Apr. 18, 2011) ("Although

the Governor is empowered to take such action, Plaintiffs provide no evidence that he has

exercised that authority related to [the challenge law]. The Governor would always be a

defendant if the Court were to find this statute provided sufficient evidence of his enforcement power.")

Absent factual allegations (a) that Defendants have the authority under the constitution or laws of Missouri to enforce the challenged provisions of §188.027 against Plaintiffs, and (b) that there is any reasonable likelihood Defendants intend to exercise that authority here, the *Ex parte Young* exception does not apply. Plaintiffs' bare assertion that "Defendants and their agents and officers are responsible for the enforcement of Missouri state law including the regulation of abortions pursuant to Mo. Rev. Stat. §§ 188.015, et seq.," Compl. ¶7, is not sufficient to overcome Defendants' Eleventh Amendment immunity from suit in federal court.

## II.     Even if the Court has subject-matter jurisdiction in this case, Plaintiffs have not stated a claim upon which relief can be granted.

In their two-count Complaint, Plaintiffs ask this Court to declare that several provisions of Mo. Rev. Stat. §188.027 violate the Establishment and Free Exercise Clauses of the First Amendment. Both counts should be dismissed for failure to state a claim upon which relief can be granted because §188.027 is not a law "respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend I.

### A.     The State's policy preference for carrying unwanted pregnancies to term does not violate the Establishment Clause.

In *Lemon v. Kurtzman*, 403 U.S. 602 (1971), the Supreme Court announced a three-part test for analyzing whether government activity results in a prohibited establishment of religion. *ACLU Nebraska Found. v. City of Plattsmouth, Neb.*, 419 F.3d 772, 775 (8th Cir. 2005). Despite *Lemon*'s "checkered career," *see Van Orden v. Perry*, 545 U.S. 677, 700 (2005) (Breyer, J.,

concurring), the Eighth Circuit still applies the *Lemon* test to claims that a statute violates the Establishment Clause. *Roark v. S. Iron R-1 Sch. Dist.*, 573 F.3d 556, 563 n.4 (8th Cir. 2009); *see also Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 849 (7th Cir. 2012) ("*Lemon v. Kurtzman* remains the prevailing analytical tool for the analysis of Establishment Clause claims"). Under *Lemon*, a statute will not be held to violate the Establishment Clause as long as (1) it has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive entanglement with religion." *ACLU Nebraska Found. v. City of Plattsmouth, Neb.*, 419 F.3d 772, 775 (8th Cir. 2005). In this case, Plaintiffs fail to allege any facts showing that §188.027 fails the *Lemon* test.

In conclusory fashion, Plaintiffs allege that § 188.027 violates the Establishment Clause because it has "[t]he purpose and effect of . . . promot[ing] the religious belief that [fetal tissue] is, from conception, a separate and unique human being whose destruction is morally wrong." Compl. ¶40. They place particular emphasis on §188.027.1(2)'s requirement that the DHSS Booklet include the Challenged Statements: "The life of each human being begins at conception. Abortion will terminate the life of a separate, unique, living human being." *See, e.g., Id.* ¶¶14-16, 23-24, 32-35. Plaintiffs allege that the Challenged Statements "are believed by some but not all people in Missouri, including without limitation members of the Catholic Church and some evangelical and fundamentalist Christian congregations," *id.* ¶16, and are not "medically necessary for an adherent to the Satanic Tenets or any other woman to make an informed decision to get an abortion," *id.* ¶34.

The Supreme Court has repeatedly rejected Establishment Clause challenges that merely alleges some statutory language "happens to coincide or harmonize with the tenets of some or all religions." *McGowan v. Maryland*, 366 U.S. 420, 442 (1961)(holding Maryland's "Sunday

15

Closing Laws" did not violate Establishment Clause simply because they coincided with observation of the Christian Sabbath). "That the Judaeo-Christian religions oppose stealing does not mean that a State or the Federal Government may not, consistent with the Establishment Clause, enact laws prohibiting larceny." *Harris v. McRae*, 448 U.S. 297, 319 (1980)(holding federal law restricting use of Medicaid funds for elective abortion "is as much a reflection of 'traditionalist' values towards abortion, as it is an embodiment of the views of any particular religion"). Plaintiffs' Establishment Clause claims have even less merit than the challenges rejected in *McGowan* and *Harris*, which involved outright bans Sunday sales and paying for elective abortions with public funds, respectively. By contrast, §188.027 doesn't ban anything. It merely requires that abortion providers make certain written materials and ultrasound procedures *available* to their patients at least 72 hours before performing an abortion. It does not require that the patient ever read the printed materials or have the ultrasound.

The Supreme Court has even rejected an Establishment Clause challenge to a different Missouri statute with language nearly identical to the provisions Plaintiffs challenge here. In *Webster v. Reprod. Health Servs.*, the Eight Circuit initially invalidated "legislative findings" by the Missouri General Assembly that "[t]he life of each human being begins at conception" as "an impermissible state adoption of a theory of when life begins." 851 F.2d 1071, 1076 (8th Cir. 1988). The Supreme Court reversed the court of appeals decision, however, because "the preamble does not by its terms regulate abortion or any other aspect of appellees' medical practice." 492 U.S. at 506. Reiterating that *Roe v. Wade*, 410 U.S. 113 (1973), "implies no limitation on the authority of a State to make a value judgment favoring childbirth over abortion," the Supreme Court concluded that Missouri's preamble "can be read simply to express

16

that sort of value judgment." *Webster v. Reprod. Health Servs.*, 492 U.S. at 506 (quoting *Maher v. Roe*, 432 U.S. 464, 473-74 (1977)).

Section 188.027 passes all three elements of the *Lemon* test. The statute has a secular purpose of conveying the General Assembly's policy preference for carrying unwanted pregnancies to term rather than aborting them. *See Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 870 (1992) ("the State has a legitimate interest in promoting the life or potential life of the unborn"). In the pursuit of that secular purpose, §188.027 neither advances, hinders, nor fosters excessive entanglement with any particular religion or religion in general. Medical professionals and their patients are treated equally regardless of their faith or lack thereof. Catholics, Satanists, evangelicals, and atheists must all be offered the DHSS Booklet, but none of them must agree with or even read its contents to obtain an abortion. All must be offered the opportunity to view an ultrasound, but none of them must have an ultrasound.

Because Plaintiffs have failed to state an Establishment Clause claim upon which relief can be granted, Count I of their Complaint should be dismissed.


**B.     Section 188.027 does not interfere with Plaintiffs' purported religious beliefs in violation of the Free Exercise Clause.**

The legal theory underlying Plaintiffs' Free Exercise claim is unclear.   Plaintiffs allege that requiring abortion providers to present the DHSS Booklet and the Ultrasound Opportunity to women seeking an abortion "interfere[s] with the exercise by Plaintiffs of their religious beliefs" by "compel[ing] exposure to religious beliefs they do not have and delaying the implementation of their decision" to obtain an abortion. Compl. ¶48. Plaintiffs further allege that the requirements of §188.027 "cause Plaintiff Mary Doe and pregnant members of the Satanic Temple to endure delay, doubt, guilt and shame when they exercise their religious beliefs to

abort [a fetus] in accordance with the Satanic Tenets." Compl. ¶49.  Neither allegation states a

cause of action under the Free Exercise Clause.

"The free exercise of religion means, first and foremost, the right to believe and profess

whatever religious doctrine one desires." *Employment Div., Dep't of Human Res. of Oregon v.

Smith*, 494 U.S. 872, 877 (1990).  It also prohibits the government from enacting legislation that

"regulates or prohibits conduct *because it is undertaken for religious reasons*." *Church of the

Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993)(emphasis added).

However, "the right of free exercise does not relieve an individual of the obligation to comply

with a 'valid and neutral law of general applicability on the ground that the law proscribes (or

prescribes) conduct that his religion prescribes (or proscribes)." *Smith*, 494 U.S. at 878-79

(quoting *United States v. Lee*, 455 U.S. 252, 263 n. 3 (1982) (Stevens, J., concurring)).

Section 188.027 is a neutral law of general applicability.  It requires abortion providers to

make certain information *available* to their patients 72 hours before performing or inducing an

abortion.  It does not compel those patients to accept, read, or agree with the proffered

information.  Plaintiffs do not and cannot identify any provision of that statute which prohibits

women seeking abortions or the doctors who perform them from engaging in any conduct

*because it is undertaken for religious reasons*.  Consequently, they have not stated a claim under

the Free Exercise Clause upon which relief can be granted.  Count II of the Complaint should

therefore be dismissed.

*   *   *   *   *

For the reasons stated above, the Court should dismiss this case for want of jurisdiction

and failure to state a claim upon which relief can be granted.

18

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 8th day of September 2015, the foregoing was filed

on the Court's ECF system, which has delivered electronic notice of this filing and copies also

sent by U.S. mail, postage prepaid, to the following:


Ronald J. Eisenberg
Schultz & Associates, LLP
640 Cepi Drive, Suite A
Chesterfield, MO 63005
(636) 537-4645
(636) 537-2599 (fax)
reisenberg@sl-lawyers.com

W. James MacNaughton
(pro hac vice)
7 Fredon Marksboro Road
Newton, N.J. 07860
(732) 634-3700
(732) 875- 1250 (fax)
wjm@wjmesq.com

Attorneys for Plaintiffs


                                    /s/J. Andrew Hirth
                                    Deputy General Counsel

19