# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

_____

THE SATANIC TEMPLE and
MARY DOE

              Docket No. 4:15-cv-986-HEA

      Plaintiffs

  -vs-

JEREMIAH JAY NIXON, GOVERNOR
OF THE STATE OF MISSOURI, and
CHRIS KOSTER, ATTORNEY GENERAL
OF THE STATE OF MISSOURI

      Defendants

_____

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO THE MOTION TO DISMISS**

October 31, 2015

                            W. James Mac Naughton
                            7 Fredon Marksboro Road
                            Newton, NJ 07860
                            732-634-3700 (o)
                            732-875-1250 (f)
                            wjm@wjmesq.com
                            Bar ID No. 701985NJ
                            Attorney for Plaintiffs The Satanic Temple
                            and Mary Doe

## Introduction

Plaintiffs submit this memorandum of law in opposition to the motion to dismiss [Doc. No. 9] supported by Defendants' memorandum of law dated September 8, 2015 [Doc. No. 12].  Plaintiffs' rights under the Establishment and Free Exercise Clauses of the First Amendment have been and will continue to be violated by Mo. Rev. Stat. §188.027.1 because the statute requires Plaintiffs, as a condition for getting an abortion, to wait 72 hours to consider the religious tenets adopted by the State of Missouri that "[t]he life of each human being begins at conception. Abortion will terminate the life of a separate, unique, living human being" (the "Missouri Tenets").  Implicit in the Missouri Tenets is the official value judgment of the State of Missouri that abortion is murder.

When Plaintiffs seek an abortion, Mo. Rev. Stat. § 188.027.1(2) requires they acknowledge receipt of a booklet (the "Booklet") that recites the Missouri Tenets and describes a fetus in a manner that strongly suggests it is a "human being" long before viability.  Mo. Rev. Stat. § 188.027.1(4) requires Plaintiffs to get an ultrasound of the fetus and be offered the opportunity to view the results and "listen to the heartbeat, if any" (the "Ultrasound Opportunity").  Then Plaintiffs must wait 72 hours before getting an abortion (the "Waiting Period").[1]  The Booklet, Ultrasound Opportunity and Waiting Period are described in this memorandum and the complaint as the Missouri Lectionary because their sole purpose is to try and persuade Plaintiffs the Missouri Tenets are true and then punish them with the Waiting Period if they do not agree.

---

[1] If the 72 waiting period is declared invalid then the Waiting Period becomes 24 hours.

1

Plaintiffs do not believe the Missouri Tenets are true. Plaintiffs believe non-viable human tissue *in utero* is part of their bodies, which they can have removed on demand in good conscience and without consideration of any of the anatomical details described in the Booklet or Ultrasound Opportunity. Plaintiffs do not believe a "human being" comes into existence at conception. Plaintiffs believe the abortion of non-viable human tissue is not murder.

The Missouri Lectionary causes Plaintiffs doubt, guilt and shame when they seek an abortion. It punishes Plaintiffs with a medically unnecessary three-day waiting period if they insist on getting an abortion they believe is not murder. The Missouri Tenets and Missouri Lectionary therefore violate Plaintiffs' rights under the Establishment and Free Expression Clauses of the First Amendment.

Defendants argue the complaint should be dismissed because;

- Plaintiffs fail to allege they are "currently pregnant" [Doc. No. 12 at pp. 14-16]; and

- Plaintiffs fail to allege there is a "reasonable likelihood" they will be prosecuted for obtaining an abortion without waiting 72 hours to consider the Missouri Tenets [Doc. No. 12 at p. 20]; and

- The Missouri Lectionary does not violate the Establishment Clause because it "convey[s] the General Assembly's policy preference for carrying unwanted pregnancies to term rather than aborting them" [Doc. No. 12 at pp. 22-23]; and

- The Missouri Lectionary is a "neutral law of general applicability" that does not compel a pregnant woman to actually read the Booklet. (Doc. No. 12 at p. 24].

2

Taking the allegations of the complaint as true, Plaintiffs have stated claims that the Missouri Lectionary violates the Establishment Clause and Free Expression Clause. Plaintiffs have standing to make those claims and Defendants are the appropriate parties against whom the claims can be made. The motion to dismiss should therefore be denied.

**Plaintiffs Have Standing to Make the Establishment Clause Claims.**

The fundamental error in Defendants' standing argument is that a woman must be pregnant to have standing to sue in federal court to vindicate her First Amendment rights. The Establishment and Free Expression Clauses protect the thoughts, ideas and beliefs a woman holds in her heart, not the tissue she may carry in her womb.

As Defendants note, this case is not predicated on the constitutional penumbra of privacy that protects a pregnant woman's right to choose whether to get an abortion. See *Roe v. Wade*, 410 U.S. 113, 153 (1973) ("This right of privacy, whether it be founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, as we feel it is, or, as the District Court determined, in the Ninth Amendment's reservation of rights to the people, is broad enough to encompass a woman's decision whether or not to terminate her pregnancy.") The constitutional privacy penumbra established in *Roe v. Wade,* by its very definition, applies only to pregnant woman. Thus, one must be a pregnant woman to come within that privacy penumbra.

But Plaintiffs claims are not based on *Roe v. Wade*. Rather they claim violations of their First Amendment rights. There is no precedent for limiting First Amendment rights based on whether the protected individual is a man or woman, much less whether

3

they are pregnant or even capable of reproduction.[2]  Thus it is irrelevant whether or when Plaintiffs are pregnant.

What is relevant for an Establishment Clause claim is whether Plaintiffs have had direct and unwelcomed contact with the Missouri Lectionary.  The Eighth Circuit holds that to establish standing for an Establishment Clause violation, plaintiff must demonstrate "direct and unwelcome personal contact with the alleged establishment of religion." *Red River Freethinkers v. City of Fargo,* 679 F.3d 1015, 1022 (8th Cir. 2012) ("*Red River*") (quoting *ACLU Neb. Found. v. City of Plattsmouth, Neb.,* 358 F.3d 1020, 1029 (8th Cir. 2004), *rev'd en banc on other grounds,* 419 F.3d 772 (8th Cir. 2005)).

In *Red River*, the plaintiffs held atheist and agnostic views.  They sought an order directing the City of Fargo to place a "sister monument" next to a statue of the Ten Commandments on municipal property. The "sister monument" had a plaque that read:

> THE GOVERNMENT OF THE UNITED STATES OF AMERICA IS NOT, IN ANY SENSE FOUNDED ON THE CHRISTIAN RELIGION - From the Treaty of Tripoli, Approved Unanimously by the United States Senate, June 7, 1797. Signed by President John Adams.

The Eight Circuit reversed the District Court's dismissal for lack of standing saying the plaintiffs had established "unwelcome contact" when they alleged they had "suffered feelings of exclusion, discomfort, and anger" by coming into contact with the Ten Commandments. *Id*. at 1014.  The Court said:

> [T]he alleged injuries are concrete. Freethinkers's [sic] members experience direct, offensive, and alienating contact with the Ten Commandments monument. That the injuries are caused by their own City is all the more alienating. And while those injuries are largely emotional, we must presume they are sincerely felt. To the extent that emotional harms differ from other, more readily quantifiable harms, that difference

---

[2] The First Amendment even protects corporations, which are incapable of biological reproduction.  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 342 (2010).

4

lacks expression in Article III's case-or-controversy requirement. [Internal quotations and citations omitted]

Here, the complaint alleges Plaintiffs had unwelcomed contact with the Missouri Tenets because they were subjected to the Missouri Lectionary when they sought abortions. [Doc. No. 1 at ¶¶27 and 29]. Plaintiffs allege they will continue to be subjected to the Missouri Lectionary in the future. [Doc. No. 1 at ¶¶28 and 30]. They allege the Missouri Lectionary causes doubt, guilt and shame in pregnant women who do not believe the Missouri Tenets. [Doc. No. 1 at at ¶24.C]. Plaintiffs have alleged more than sufficient unwelcomed contact with the Missouri Tenets and Missouri Lectionary to have standing to challenge them as the impermissible adoption of a state religion in violation of the Establishment Clause.

### Plaintiffs Have Standing to Make the Free Exercise Claims.

Plaintiffs' claims for violation of the Free Exercise Clause, like their Establishment Clause claims, are First Amendment claims. The First Amendment protects Plaintiffs regardless of their gender or reproductive status. The standing and ripeness jurisprudence of *Roe v. Wade* and its progeny is irrelevant to Plaintiffs' standing to make the Free Exercise claims.

Plaintiffs have standing to claim the Missouri Lectionary violates their rights under the Free Exercise Clause because the Missouri Lectionary tries to coerce Plaintiffs into believing the Missouri Tenets. *Abington School District v. Schempp,* 374 U.S. 203, 233 (1963) ("It is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion.").

The greatest tests of faith occur when one has to make a decision with profound and irrevocable life consequences. The decision to get an abortion is just such a test.

5

Abortion, by its very nature, causes most pregnant women to consider whether the fetus is, as the Missouri Tenets proclaim, a "human being" whose destruction is murder. Under the First Amendment, each woman has the absolute right to hold the religious belief the fetus is simply part of her body whose removal has no moral implications.

When a pregnant woman arrives at Planned Parenthood's waiting rooms in St. Louis to get an abortion, she has already considered to some extent whether her fetus is a "human being" and the morality of getting an abortion. She may believe the fetus is a "human being" and abortion is murder but still proceed. Or she may have not reached any conclusion to one of life's most contentious religious issues and still proceed.

Or she may arrive at Planned Parenthood's waiting rooms sincerely believing, as a matter of her religious belief, that the human tissue she carries *in utero* is simply part of her body and can be removed upon demand and with no moral consequences. This woman is Mary Doe and the other Plaintiffs in this case. These are the people upon whom the coercive effect of the Missouri Lectionary is the greatest.

The Missouri Lectionary seeks to change Plaintiffs' religious belief at the very moment when Plaintiffs are implementing a profound decision based on their sincerely held religious belief that a fetus is not a "human being." The Missouri Lectionary compels Plaintiffs' exposure to the Missouri Tenet and all of the purported "scientific evidence" the State of Missouri can muster in support of its argument that a fetus is a separate and unique human being whose destruction is murder. And then – to make sure Plaintiffs get the message – the State of Missouri compels Plaintiffs to wait three days before getting an abortion -- notwithstanding their sincerely held religious belief that a fetus is not a "human being" and abortion is not murder.

6

The Missouri Lectionary is patronizing and punitive. It tries to coerce Plaintiffs into believing the Missouri Tenets and punishes them if they disagree by making them wait unnecessarily for three days before returning to Planned Parenthood for an abortion.

The Missouri Lectionary presents Plaintiffs with a Hobson's Choice at a profoundly difficult and vulnerable time in their lives -- they can either change their religious beliefs and forgo the abortion or proceed with an abortion (72 hours later) and endure doubt, guilt and shame because, in the eyes of the State of Missouri, they are murderers.

The Missouri Lectionary thus seeks to coerce Plaintiffs into believing the Missouri Tenets.  This coercion gives Plaintiffs standing to challenge the Missouri Lectionary under the Free Exercise Clause.  *Engel v. Vitale*, 370 U.S. 421, 431 (1962) ("*Engel*") ("When the power, prestige and financial support of Government is placed behind a particular religious belief, the indirect coercive pressure upon religious minorities to conform to the prevailing officially approved religion is plain.")

Pregnant women do not have to endure that kind of coercive pressure and humiliation in other states of the Union.  There is no reason they should have to endure it in Missouri.

### The Defendants Do Not Have Eleventh Amendment Immunity.

Defendants' argue they enjoy Eleventh Amendment immunity because Plaintiffs failed to allege "Defendants have authority under the constitution or laws of Missouri to enforce the challenged provisions of §188.027 against Plaintiffs and . . . there is a reasonable likelihood Defendants intend to exercise that authority here."  [Doc. No. 12 at p. 20].  They cite no authority to support this novel legal principle because none exists.

7

The Eleventh Amendment does not bar the injunctive and declaratory relief sought in this case for the State of Missouri's violations of the First Amendment. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 US 261, 276-77 (1997) ("[W]here prospective relief is sought against individual state officers in a federal forum based on a federal right, the Eleventh Amendment, in most cases, is not a bar."). Citing *Ex Parte Young,* 209 U.S. 123 (1908), Defendants argue they are not the appropriate Missouri state officials to be sued in their official capacity because Plaintiffs have not alleged "some connection" between Defendants and the enforcement of the Missouri Lectionary. This argument misconstrues *Ex Parte Young*.

The Missouri Lectionary preaches the Missouri Tenets using the power and resources of the State of Missouri to a congregation of pregnant women in the waiting rooms of Planned Parenthood.  Defendants argue they have no responsibility for that preaching in violation of the Establishment Clause and Free Expression Clause because they have not themselves personally "initiated" any criminal prosecutions of Plaintiffs for getting an abortion without receiving the Missouri Lectionary.  They ask the Court to absolve them of responsibility for Missouri's adoption of the Missouri Tenets -- a state religion -- because presumably somebody else in state government has a closer "connection" than they do to enforcing the Missouri Lectionary.[3]  *Ex Parte Young* grants them no such absolution.

Plaintiffs allege both Defendants have infringed on Plaintiffs' First Amendment rights "in the creation, distribution and enforcement of the Missouri Lectionary to

---

[3] Should the Court grant Defendants their absolution, Plaintiffs respectfully request leave to amend the Complaint to identify and sue the appropriate offending state actors by name and title, e.g. the OBGYN nurses at Planned Parenthood, who deliver the Ultrasound Opportunity and the state employees who print and distribute the Booklet.

8

promote the Missouri Tenets." [Doc. No. 1 at ¶¶44 and 50]. The Court must accept these allegations as true on a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6). Plaintiffs thus state the necessary connection between Defendants and the Missouri Lectionary required by *Ex Parte Young* to remove Defendants' Eleventh Amendment immunity.

This is not a case in which Defendants have no power to enforce the Missouri Lectionary. Compare *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc). ("[P]laintiff may not sue a state official who is without any power to enforce the complained-of statute"). Defendant Attorney General Koster has the authority to prosecute anyone who provides an abortion without delivering the Missouri Lectionary if so directed by the Governor, Mo. Rev. Stat. § 27.030. This authority, standing alone, is a sufficient connection between both the Governor and the Attorney General with the enforcement of the Missouri Lectionary for purposes of *Ex Parte Young*, even if it is not exercised. *281 Care Committee v. Arneson*, 638 F. 3d 621, 632 (8th Cir. 2011). See also *Reproductive Health Services v. Nixon*, 428 F. 3d 1139, 1145-46 (8th Cir. 2005).

Defendant Governor Nixon has the power to appoint all nine members of The State Board of Registration for the Healing Arts, which regulates doctors and hospitals and imposes sanctions if they provide an abortion without delivering the Missouri Lectionary. Mo. Rev. Stat. § 334.120.1. This power, standing alone, creates the "connection" required by *Ex Parte Young* even if no physicians or hospitals are actually sanctioned. *Citizens for Equal Prot. v. Bruning,* 455 F.3d 859, 864 (8th Cir. 2006) (The broad power held by a state governor and a state Attorney General to enforce compliance with a challenged law was enough to show "some connection with the enforcement" for

9

purposes of *Ex Parte Young*.)

Defendants are, of course, free to show they actually have no connection with the enforcement of the Missouri Lectionary by disavowing any intention to use their powers to preach the Missouri Tenets. *281 Care Committee v. Arneson*, 766 F. 3d 774, 797 (8th Cir. 2014) ("Now that the attorney general has testified with assurances that the office will not take up its discretionary ability to assist in the prosecution of [Minn.Stat.] §211B.06, Appellants are not subject to or threatened with any enforcement proceeding by the attorney general. Thus, we find the attorney general immune from suit under the Eleventh Amendment.").

Defendant Attorney General Koster could, for example, disavow any intention to prosecute Plaintiffs for getting an abortion without receiving the Missouri Lectionary. Defendant Governor Nixon could also disavow any intention of directing the Attorney General to engage in such a prosecution and show that the Governor's appointees to The State Board of Registration for the Healing Arts will never sanction anyone for providing an abortion without delivering the Missouri Lectionary.

But the Complaint, as stated and in light of Defendants' unquestioned power to sanction abortions provided without the blessing of the Missouri Lectionary, states a sufficient connection to nullify Defendant's Eleventh Amendment immunity pursuant to *Ex Parte Young*.

**The Missouri Tenets Violate the Establishment Clause.**

The Eighth Circuit has already found the Missouri Tenets are "an impermissible state adoption of a theory when life begins." *Webster v. Reproductive Health Services.*, 851 F.2d 1071, 1076 (8th Cir. 1988) ("*Webster*"), *rev'd other grounds*, 492 U.S. 490

10

(1989). Defendants argue the Supreme Court relied on the Establishment Clause to reverse the Eighth Circuit's finding that the Missouri Tenets are "an impermissible state adoption of a theory when life begins." [Doc. No. 12 at p. 22]. That is not correct. The Supreme Court call the Missouri Tenets a "value judgment" and turned a blind eye to that "value judgment" when it overturned the Eighth Circuit on other issues. 492 U.S. at 491.

Justice Stevens, who concurred in part and dissented in part in *Webster*, found the Missouri Tenets violated the Establishment Clause:

> Indeed, I am persuaded that the absence of any secular purpose for the legislative declarations that life begins at conception and that conception occurs at fertilization makes the relevant portion of the preamble invalid under the Establishment Clause of the First Amendment to the Federal Constitution. This conclusion does not, and could not, rest on the fact that the statement happens to coincide with the tenets of certain religions, or on the fact that the legislators who voted to enact it may have been motivated by religious considerations. Rather, it rests on the fact that the preamble, an unequivocal endorsement of a religious tenet of some but by no means all Christian faiths, serves no identifiable secular purpose. That fact alone compels a conclusion that the statute violates the Establishment Clause.[4]

492 U.S. at 566-67 [internal quotations and citations omitted]

Neither the Eighth Circuit nor the Supreme Court was presented with the First Amendment issues of this case and thus neither had reason to conclusively decide whether a legislative declaration of "when life begins" violates the Establishment Clause. Thus the question for this Court is whether preaching the "state's theory of when life begins" using the Missouri Lectionary violates the Establishment Clause. Plaintiffs' submit it does.

---

[4] Justice Stevens traced the theological origins for the Missouri Tenets back to St. Thomas Aquinas and concluded "[i]f the views of St. Thomas were held as widely today as they were in the Middle Ages, and if a state legislature were to enact a statute prefaced with a 'finding' that female life begins 80 days after conception and male life begins 40 days after conception, I have no doubt that this Court would promptly conclude that such an endorsement of a particular religious tenet is violative of the Establishment Clause." 492 U.S. at 568.

11

Defendants do not dispute the Missouri Tenets are a statement of religious belief. Rather, citing *Lemon v. Kurtzman,* 403 U.S. 602 (1971) ("*Lemon*"), Defendants argue the Missouri Lectionary does not violate the Establishment Clause because 1) the Missouri Lectionary has a secular purpose; 2) the Missouri Lectionary neither advances nor inhibits religious beliefs and 3) the Missouri Lectionary does not foster an excessive entanglement with religion.  [Doc. No. 12 at p. 21] These arguments have no merit.

There are few absolutes in Establishment Clause jurisprudence.  However, one absolute is the Establishment Clause forbids "government-sponsored indoctrination into the beliefs of a particular religious faith." *Grand Rapids School Dist. v. Ball*, 473 U.S. 373, 385 (1985) ("*Ball*").  The Catholic Church and some evangelical Christian denominations in Missouri believe the Missouri Tenets. Members of other denominations and religious, including Plaintiffs, do not.  Nor, for that matter, do the secular courts in this country. *Thornburgh v. American College of Obstetricians & Gynecologists*, 476 U.S. 747, 779 (1986) (Stevens, J., concurring) ("[T]here is a fundamental and well-recognized difference between a fetus and a human being.").

The purpose of the Missouri Lectionary is to indoctrinate Plaintiffs into the belief held by some Christians in Missouri that a separate and unique human being begins at conception. The Missouri Lectionary serves no other purpose and for that reason alone violates the Establishment Clause.[5]

Defendants ask the Court to engage in the pretense that the Missouri Lectionary serves the secular purpose of  "conveying the General Assembly's policy preference for

---

[5] The fact that Plaintiffs are not *required* to read the Booklet is irrelevant.  The fact that the State of Missouri mandates the Booklet's content and requires its distribution suffices to show the purpose of the Booklet is to promote the religious beliefs embodied in the Missouri Tenets, regardless of whether it actually changes any hearts or minds.

12

carrying unwanted pregnancies to term rather than aborting them." [Doc. No. 12 at p. 23] But the policy of protecting "unwanted pregnancies" is implemented by trying to persuade the reluctant mother that the Missouri Tenets are true and abortion is murder. That promotes a religious belief, not a secular purpose. See *Lynch v. Donnelly*, 465 U.S. 668, 690-91 (1984) (O'Connor, J. concurring) ("The purpose prong of the *Lemon* test requires that a government activity have a secular purpose. That requirement is not satisfied, however, by the mere existence of some secular purpose, however dominated by religious purposes.")

A "preference for carrying unwanted pregnancies to term" is in direct conflict with the expressly stated legislative purpose of the Missouri Lectionary to promote the "compelling interest of the state to ensure that the choice to consent to an abortion is voluntary and informed, and given freely and without coercion." Mo. Rev. Stat. §188.027.11. This conflict shows the hypocrisy of the State of Missouri in trying to put secular window dressing on "an impermissible state adoption of a theory when life begins."

The phrase "given freely and without coercion" is, at best, an unintended irony since the sole purpose of the Missouri Lectionary is to promote the State of Missouri's religious belief that a separate and unique human being begins at conception. At worst, it is an exercise in Orwellian double speak that should give serious pause to anyone who knows the Founding Fathers really did not want our government to establish a state religion.

But even assuming, *arguendo,* some secular purpose could be ascribed to the Missouri Lectionary, its *effect* is to cause doubt, guilt and shame in those who do not believe the Missouri Tenets. Women who believe abortion is murder generally do not get abortions

13

and thus are never subjected to the Missouri Lectionary. The Missouri Lectionary causes Plaintiffs and others who do not believe the Missouri Tenets to suffer doubt, guilt and shame at a critical time in their lives when they act on their beliefs.  The Missouri Lectionary makes clear their beliefs to do not enjoy the approval of the State of Missouri. This is the essence of an Establishment Clause violation.  *Ball*, 473 U.S. at 389 ("Government promotes religion as effectively when it fosters a close identification of its powers and responsibilities with those of any — or all — religious denominations as when it attempts to inculcate specific religious doctrines. If this identification conveys a message of government endorsement or disapproval of religion, a core purpose of the Establishment Clause is violated."); *Gillette v. United States*, 401 US 437, 450 (1971)  ("[T]he Establishment Clause prohibits government from abandoning secular purposes in order to put an imprimatur on one religion, or on religion as such, or to favor the adherents of any sect or religious organization.")   Thus the second prong of the *Lemon* test is not satisfied because Plaintiff's justifiably perceive the Missouri Lectionary as disapproval of their beliefs.

The Missouri Lectionary also promotes an excessive entanglement of the State of Missouri in religious beliefs.  In most states of the Union, a pregnant woman who goes into an abortion clinic can reasonably expect to be treated as a medical patient – dispassionately, clinically and without regard to her religious beliefs.  The waiting room is a place where medical care, not theology, is dispensed.  Not so in Missouri.

In Missouri, a pregnant woman has only one place to get an abortion, Planned Parenthood in St. Louis.  Every day pregnant women run a gauntlet of Right to Life zealots prowling the streets outside Planned Parenthood shouting and waving placards condemning women who enter Planned Parenthood for murdering unborn children.

14

Once inside Planned Parenthood, the pregnant woman finds the State of Missouri has turned the waiting room into a pulpit for preaching the same Missouri Tenets promoted by the zealots on the street, but with far more sophistication and cunning. She must acknowledge receipt of the Booklet. She must undergo an ultrasound.[6] She is then sent home for three days for no discernible purpose other than to reconsider her belief that abortion is not murder. She then returns to Planned Parenthood and once again runs the zealots' gauntlet. By the time she leaves Planned Parenthood after her abortion, she understandably feels doubt, guilt and shame. Indeed, that is the very purpose of the Missouri Lectionary.

The Missouri Lectionary has the same practical effect as if the State of Missouri allowed the Right to Life zealots to come off the streets and enter the waiting rooms at Planned Parenthood so they can continue their haranguing condemnation of pregnant women who want an abortion. The Court would have no hesitation in striking down such an abuse of government power as an extreme entanglement of the state with religion.

The Missouri Lectionary brings the Right to Life message into Planned Parenthood's waiting rooms of with all the majesty and imprimatur of legitimacy the State of Missouri can muster. It is even more pernicious than allowing Right to Life zealots to preach in Planned Parenthood's waiting rooms and thus is also an excessive entanglement of the state in the exercise of religious beliefs.

**The Missouri Lectionary Violates the Free Exercise Clause.**

Citing *Employment Div. Dept. of Human Resources of Oregon v. Smith,* 494 U.S. 872 (1990), Defendants argue the Missouri Tenets are a "neutral law of general applicability" and therefore do not violate the Free Exercise Clause. The plain meaning of the Missouri Tenets

---

[6] Defendants erroneously argue Plaintiffs are not required to have an ultrasound. [Doc. No. 12 at p. 23. That is not true.

15

and the Missouri Lectionary controls whether they are content neutral. *Phelps-Roper v. Koster*, 713 F. 3d 942, 950 (8th Cir. 2013). ("The plain meaning of the text controls, and the legislature's specific motivation for passing a law is not relevant, so long as the provision is neutral on its face."). As the Eighth Circuit held in *Webster*, the Missouri Tenets are not neutral on their face. They are unabashedly "an impermissible state adoption of a theory when life begins." The Missouri Lectionary expressly incorporates the Missouri Tenets and vigorously presents the case they are true.

One of the most contentious philosophical, religious and political debates of our time is when does human tissue *in utero* become imbued with sufficient standing as a "human being" to get the same legal protections as a baby that lives and breathes separate and apart from his or her mother. A core purpose of the First Amendment is to protect that political and religious debate from resolution by government. *Engel*, 370 U.S. at 443 (Douglas, J. concurring) ("[I]f a religious leaven is to be worked into the affairs of our people, it is to be done by individuals and groups, not by the Government.")

By enacting the Missouri Tenets, the State of Missouri officially weighs in on the side that believes a human being begins at conception and abortion is murder. By creating and distributing the Missouri Lectionary, the State of Missouri officially brings The Right to Life message into Planned Parenthood's waiting rooms. The Missouri Tenets, as delivered by the Missouri Lectionary, are not – by any stretch of the imagination – a content neutral law. They promote a religious belief shared by some people in Missouri, but not all, including Plaintiffs. Compare *Survivors Network of Those Abused By Priests, Inc. v. Joyce*, 779 F. 3d 785, 792 (8th Cir. 2015) in which The Worship Protection Act, Mo. Rev. Stat. § 574.035, targeted "the expressive content of the protest message" and

16

was therefore not content neutral.

Since the Missouri Tenets and Missouri Lectionary are not content-neutral, they must be justified as narrowly drawn to serve state interests of the highest order. *Church of Lukumi Babalu Aye, Inc v. City of Hialeah*, 508 U.S. 520, 546 (1993). Defendants have made no such showing.

## Conclusion.

For the reasons set forth above, Plaintiffs have standing to assert their claims the Missouri Tenets and Missouri Lectionary violate the Establishment Clause and Free Expression Clause of the First Amendment, Defendants are not immune from those claims by operation of the Eleventh Amendment. Plaintiffs have sufficiently stated their claims the Missouri Tenets and Missouri Lectionary violate the Establishment Clause and Free Expression Clause of the First Amendment. The motion to dismiss must be denied.

October 31, 2015

*W. James Mac Naughton*
W. James Mac Naughton
7 Fredon Marksboro Road
Newton, NJ 07860
732-634-3700 (o)
732-875-1250 (f)
wjm@wjmesq.com
Bar ID No. 701985NJ
Attorney for Plaintiffs The Satanic Temple
and Mary Doe

## CERTIFICATE OF SERVICE

   W. James Mac Naughton certifies that I served this pleading on the persons listed below by ECF on the date of this pleading was filed.

Chris Koster
Attorney General
J. Andrew Hirth
Deputy General Counsel
P.O. Box 899
Jefferson City, MO 65102
*Attorneys for Defendants*

                   */s/ W. James Mac Naughton*
                   W. James Mac Naughton